UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#83/158

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

Present: The Honorable   Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgment.**

Before the Court is a motion for summary judgment filed by Defendant Marathon Digital Holdings, Inc., formerly known as Marathon Patent Group, Inc. ("Defendant"). *See generally* Dkt. # 88 ("*Mot.*").[1]  Plaintiff Michael Ho ("Plaintiff") opposed, *see generally* Dkt. # 144 ("*Opp.*"), and Defendant replied, *see generally* Dkt. # 147 ("*Reply*").[2]  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving, opposing, and reply papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

---

[1] The parties applied to file their briefs and supporting evidence under seal.  *See* Dkts. # 84, 129, 154.  The Court cites the unsealed versions of the parties' briefs and filings.

[2] Plaintiff filed an application to strike Defendant's reply to Plaintiff's separate statement of facts and for leave to file a sur-reply on the grounds that Defendant provides new evidence and raises new arguments in its reply brief, *see* Dkt. # 158, which Defendant opposed, *see* Dkt. # 161.  The Court **DENIES** Plaintiff's request to file a sur-reply and **DENIES** Plaintiff's request to strike Defendant's reply to Plaintiff's separate statement of facts because the Court declines to consider the new evidence Defendant submitted along with its reply brief and any new arguments raised in Defendant's reply brief that go beyond responding to the arguments in Plaintiff's opposition.  *See AEG Holdco LLC v. Vasquez*, 2:21-cv-05290-VAP (AGRx), 2021 WL 4859975, at *16 n.11 (C.D. Cal. Sept. 22, 2021) ("New evidence submitted as part of a reply is improper because it does not allow the defendant an adequate opportunity to respond." (internal quotation marks and citation omitted)); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (stating that courts should not consider new evidence presented in reply to a motion for summary judgment without giving the opposing party an opportunity to respond).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

I.   Background

This dispute involves the extent of Plaintiff's role in facilitating a transaction between Defendant and a third party. Defendant is a digital asset technology company engaged in the business of mining cryptocurrencies. *See Defendant's Statement of Uncontroverted Facts*, Dkt. # 88-1 ("*DSUF*"), ¶ 1; *Plaintiff's Statement of Genuine Issues*, Dkt. # 144-1 ("*PSGI*"), ¶ 1. Since 2017, Plaintiff has been involved in locating energy assets to power mining operations for Bitcoin—a type of cryptocurrency. *PSGI* ¶ 48; *Defendant's Reply to Plaintiff's Separate Statement*, Dkt. # 155-1 ("*DRPS*"), ¶ 48; *Declaration of Michael Ho*, Dkt. # 144-3, Ex. A ("*Ho Decl.*"), ¶ 4.

Third party Beowulf is an independent energy producer that controls a coal-fired power plant in Hardin, Montana ("Hardin facility"), which has capacity in excess of 100 megawatts ("MW"). *DSUF* ¶ 2; *PSGI* ¶¶ 2, 51; *DRPS* ¶ 51. Other relevant third parties include Bryan Pascual ("Pascual") and John O'Rourke ("O'Rourke"), who are principals of Two Point One LLC ("2P1"). *PSGI* ¶¶ 52–53; *DRPS* ¶¶ 52–53.

In September 2019, Defendant entered into a two-year Consulting Agreement with Caerus Investment Holdings, Ltd. ("Caerus"), signed by Plaintiff on behalf of Caerus as its president. *See generally* Dkt. # 88-3, Ex. 22 ("*Consulting Agr.*"). The Consulting Agreement identifies Caerus as the "Consultant" and states that Defendant will pay the Consultant a fee of 150,000 shares of Defendant's common stock in consideration for the services rendered under the agreement. *See id.* at 1.

In November 2019, both Plaintiff and Pascual began exploring opportunities for a cryptocurrency mining operation at Beowulf's Hardin facility. *DSUF* ¶ 8; *PSGI* ¶ 8. Between November 2019 and June 2020, Plaintiff and Pascual exchanged numerous e-mails and WhatsApp messages with Beowulf's executive vice president Nazar Khan ("Khan") about a potential transaction involving the Hardin facility. *See* Dkt. # 144-3, Exs. 4, 8; *Ho Decl.* ¶ 19. In January 2020, Plaintiff and Pascual visited the Hardin facility and met Khan in person. *See Plaintiff's Excerpts of Videoconference Videotaped Deposition of Bryan Pascual*, Dkt. # 144-5, Ex. 27 ("*Pascual Depo. Excerpts*") 103:10–24; *Plaintiff's Excerpts of Videotaped and Videoconference Deposition of Nazar Khan*, Dkt. # 144-4, Ex. 28 ("*Khan Depo. Excerpts 1*") 24:4–8, 42:23–44:4; *Ho Decl.* ¶ 20.

Plaintiff also spoke with O'Rourke "about potentially getting involved in the transaction." *Ho Decl.* ¶ 24; *see also DSUF* ¶ 9; *PSGI* ¶ 9; Dkt. # 144-3, Ex. 7. Plaintiff testified that he told

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

O'Rourke "high level details" about the Beowulf opportunity but that he did not disclose Beowulf's name. *Plaintiff's Excerpts of Confidential Remote Videotaped Deposition of Michael Ho*, Dkt. # 144-5 ("*Ho Depo. Excerpts*") 169:9–15.

In late May and early June, Plaintiff began trying to put together a deal between Defendant and Beowulf. *PSGI* ¶ 57; *DRPS* ¶ 57. Plaintiff exchanged a series of WhatsApp messages about a proposed deal with Khan between June 4 and 16, *see* Dkt. # 144-3, Ex. 8; *DSUF* ¶ 16; *PSGI* ¶ 16, as well as numerous WhatsApp messages and e-mails with Defendant's chief operating officer, Merrick Okamoto ("Okamoto"), beginning on June 3, *see* Dkt. # 144-4, Exs. 9–15.

Plaintiff would not disclose the name of the company in question—Beowulf—to Okamoto until he agreed to sign a non-disclosure agreement. *DSUF* ¶ 15; *PSGI* ¶ 15. Plaintiff sent Okamoto a standard template non-disclosure agreement on June 5, inviting Okamoto to "make any changes necessary." Dkt. # 144-4, Ex. 10; *DSUF* ¶ 15; *PSGI* ¶ 15. Okamoto responded indicating that he had made a revision to allow Defendant to share proprietary information provided by Plaintiff with Defendant's advisors as well as its employees and sending a copy of the revised Mutual Binding Non-Disclosure Agreement ("NDA"). *See* Dkt. # 144-4, Ex. 11; *see also DSUF* ¶ 20; *PSGI* ¶ 20.

Unlike the Consulting Agreement between Caerus and Defendant, Plaintiff is a party to the NDA. *See* Dkt. # 88-3, Ex. 5 ("*NDA*"). The NDA describes Proprietary Information as follows:

Each party (the "Receiving Party") understands that the other party (the "Disclosing Party") has disclosed or may disclose information including, without limitation, computer programs code, algorithms, know-how, formulas, processes, ideas, inventions (whether patentable or not), and other technical, business, financial and product development plans, forecasts, strategies and information, which to the extent previously, presently, or subsequently disclosed to the Receiving Party, is hereinafter referred to as "Proprietary Information" of the Disclosing party. All Proprietary Information shall be protected and safeguarded if it is (a) marked as the Disclosing Party's confidential or proprietary information (or with an equivalent legend) at the time of disclosure, if disclosed in tangible form; or (b) identified as Proprietary Information at the time of disclosure. Notwithstanding the failure of the Disclosing Party to mark information as confidential or proprietary as described above, information that, by its very nature,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

or under the particular circumstances of disclosure, should reasonably be understood to be confidential or proprietary, shall be deemed to be Proprietary Information.

*Id.* "In consideration of the parties' discussions and access the Receiving Party may have to Proprietary Information of the Disclosing Party," *id.*, the NDA sets forth a series of obligations, including in relevant part:

1. The Receiving Party agrees (i) to hold the Disclosing Party's Proprietary Information in confidence and to take all necessary steps to protect such Proprietary Information . . . (ii) not to divulge any such Proprietary Information or any information derived therefrom to any third person, (iii) not to make any use of such Proprietary Information, except for the below stated purpose, and (iv) not to copy or reverse engineer, or attempt to derive the composition or underlying information of any such Proprietary Information.

2. The Receiving Party agrees that the Proprietary Information shall not be used except for the following purpose: Opportunities relating around cryptocurrency mining, data centers, and sourcing of sites with energy for the purpose of utilizing for data center usage or cryptocurrency mining.

3. The Receiving Party further agrees to limit the use of and access to the Disclosing Party's Proprietary Information to the Receiving Party's employees and its Advisors who need to know such Proprietary Information for said purposes and shall cause such employees to comply with the obligations set forth herein.

*Id.* ¶¶ 1–3. Paragraph 4 of the NDA states:

4. The Disclosing Party agrees that the foregoing obligations shall not apply with respect to information that (i) was in the possession of the Receiving Party or known by it prior to receipt from the Disclosing Party, or (ii) was rightfully disclosed to the Receiving Party by another person without restriction, or (iii) was independently developed by the Receiving Party without access to such Proprietary Information, or (iv) is required to be disclosed pursuant to any statutory or regulatory authority or court order. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

*Id.* ¶ 4.  Separately, the parties also included a "non-circumvention clause," which reads:

> 5. During the term of this Agreement, neither party shall attempt to do business with, or otherwise solicit any business contacts found or otherwise referred by Disclosing party to Receiving Party for the purpose of circumventing, the result of which shall be to prevent the Disclosing Party from realizing or recognizing a profit, fees or otherwise, without the specific written approval of the Disclosing Party.  If such circumvention shall occur the Disclosing Party shall be entitled to any commissions due pursuant to this Agreement or relating to such transaction.

*Id.* ¶ 5.  On June 9, after returning the NDA, Plaintiff e-mailed Okamoto notes about a potential energy transaction at an unnamed location in Montana and proposals for Defendant's investment in the transaction.  *DSUF* ¶ 26; *PSGI* ¶¶ 26, 62; *DRPS* ¶ 62; Dkt. # 144-4, Ex. 14.  The e-mail has a subject line of "Initial Montana Notes" and states:

> Hi Merrick, Site in question is 100 MW[.]  30MW is currently spoken for[.]  70MW is first come first serve with a reserve of 10-15MW (our initial expected launch size)[.]  Initial capex will be $300k cash + $200k restricted stock per MW in which:
>
> - Container (Bitmain N5 or similar) and everything in container will be owned by Marathon
> - Long term lease of the parcel occupied by our containers at $1
> - PPA and managed services contract all in at 3.75c
> - Includes, least at $1, insurance, property tax, basic labour: cleaning, hard resets, remote monitoring and management of servers
> - Spare parts and labour hours for changing parts, additional maintenance at $60/hour
>
> Can allocate an immediate 2MW to be available within 45 days of close[.]  Balance MW to be plug ready inclusive of arrival of containers to be Nov 1 2020[.]  Thanks

Dkt. # 144-4, Ex. 14.  Plaintiff asserts that the potential deal outlined in this e-mail included proposed compensation for Plaintiff, including $200,000 in restricted stock for each MW of power Defendant used.  *PSGI* ¶ 21.  The e-mail contains a footer stating in relevant part: "This email may contain confidential and/or privileged information. . . . Any unauthorized copying, disclosure and/or distribution of the contends and/or attachments in this email is strictly prohibited" ("confidentiality footer").  Dkt. # 144-4, Ex. 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

Later that day, Okamoto responded by e-mail, stating in relevant part: "This all sounds interesting. We need documents to review. Leases, PPA Power Agreements, etc." Dkt. # 144-6, Ex. 41. Plaintiff and Okamoto exchanged a few messages, with Okamoto reiterating that "[w]e can't go any further until you provide the documentation requested." *Id.* At some point between June 9 and June 12, 2020, Plaintiff disclosed Beowulf's name to Okamoto. *See PSGI* ¶ 62; *DRPS* ¶ 62; *Ho Decl.* ¶ 39. On June 15, Okamoto sent Plaintiff an e-mail asking about the "due diligence materials" for the potential transaction as well as the facility's address. *See* Dkt. # 88-3, Ex. 11. Plaintiff then provided a link to Beowulf's website for "[b]ackground on the company." *See id.* Although the parties dispute whether the documents Okamoto requested were due diligence materials, *see DSUF* ¶ 28; *PSGI* ¶ 28, Plaintiff does not contend that he ever provided the documents Okamoto requested, *DSUF* ¶ 30; *PSGI* ¶ 30.

The parties dispute the extent to which Defendant knew about Beowulf before Plaintiff disclosed the company's name to Okamoto. *See PSGI* ¶ 63; *DRPS* ¶ 63. Okamoto testified that the "[f]irst time [he] knew the name of the company" was when Plaintiff disclosed it to him. *Plaintiff's Excerpts of Videotaped Videoconference Deposition of Merrick Okamoto*, Dkt. # 144-5, Ex. 23 ("*Okamoto Depo. Excerpts*") 182:17–24; *see also id.* 229:16–22 (agreeing that Plaintiff's disclosure of Beowulf's name and website was "the first time [Okamoto] heard from anybody, [Plaintiff] or anybody else . . . the name Beowulf"). However, upon visiting Beowulf's website after Plaintiff shared the link to the website, Okamoto "thought [he] possibly had seen this before and the person [he] thought [he] had talked to about this was John O'Rourke who was an advisor to [him]." *Id.* 183:12–18. Okamoto testified that he then called O'Rourke to ask if Beowulf's Hardin facility was the same facility O'Rourke had told Okamoto about in January or February and that O'Rourke confirmed it was. *See id.* 183:19–184:2.

Meanwhile, O'Rourke testified that he was "not sure" whether this phone call with Okamoto, which took place on June 16, was the first time he spoke with Okamoto about Beowulf. *Plaintiff's Excerpts of Confidential Videotaped Videoconference Deposition of John O'Rourke*, Dkt. # 144-5, Ex. 26 ("*O'Rourke Depo. Excerpts*") 107:8–10. O'Rourke testified that he "remember[ed] at some point along the line bringing up that there may be an opportunity to pursue something with Beowulf at their Hardin facility" but that he did not recall when he first mentioned Beowulf as a potential partner for Defendant. *See id.* 94:6–9, 94:19–97:24. Pascual testified that he "never was in contact with [Defendant]" and has never spoken with Okamoto on the phone or met him in person. *Plaintiff's Excerpts of Zoom Videoconference Videotaped Deposition of Bryan Pascual*, Dkt. # 144-5, Ex. 27 ("*Pascual Depo. Excerpts*") 57:9–11, 84:2–8.

It is undisputed that, following Plaintiff's disclosure of Beowulf's name, Okamoto

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

engaged in discussions about Beowulf with both Plaintiff and O'Rourke. *See PSGI* ¶ 68; *DRPS* ¶ 68. On June 17—the day after Okamoto called O'Rourke asking about Beowulf—Okamoto sent O'Rourke a text message stating: "Hey John. It was great to catch up yesterday. You indicated that you may have a better 'in' with the Montana property owners. I'm interested in investigating that further if you can provide any additional details." *See id.* Ex. 32. Defendant does not dispute that the "in" referred to in this text message was Pascual. *See PSGI* ¶ 67; *DRPS* ¶ 67.

Okamoto and Plaintiff also exchanged WhatsApp messages about the terms of a potential Beowulf deal. *See* Dkt. # 144-4, Ex. 9. On June 18, Plaintiff sent Defendant a message asking: "Would hosting w/o [sic] capex @ 4.7c all in be of interest? Will try to work further down as well." *Id.* Okamoto replied: "That number peaks [sic] my interest. I'll call you in the morning. I need specific details on any required deposits if any." *Id.* On June 19, Okamoto sent O'Rourke a text message stating: "[Plaintiff] texted me this morning offering me space at Montana for $0.047 'all in' including hosting/monitoring with No Capex required by me," to which O'Rourke responded, "I quoted $0.045 yesterday []," and Okamoto replied, "Even better!!" *See* Dkt. # 144-6, Ex. 36.

Plaintiff contends that sometime in mid-June, both Defendant and Beowulf cut off communication with him and decided to instead work through O'Rourke and Pascual on the deal. *PSGI* ¶ 33. It is undisputed that Okamoto eventually stopped communicating with Plaintiff and blocked his number. *PSGI* ¶ 69; *DRPS* ¶ 69; *see* Dkt. # 144-4, Ex. 9 at 30. On June 16, Khan sent Plaintiff a message stating: "We are going to pass on your proposal. It complicates some of the other discussions we have going on. I appreciate you bringing us the opportunity, but it is not a good fit for now." *See* Dkt. # 144-3, Ex. 8. Khan testified that he spent time reviewing Plaintiff's various proposals but that there "was nothing there that really made sense," and that Beowulf was looking for "a solution that takes all 100 megawatts" rather than the smaller deal proposed by Plaintiff. *Defendant's Excerpts of Videotaped and Videoconference Deposition of Nazar Khan*, Dkt. # 88-2, Ex. C ("*Khan Depo. Excerpts 2*") 106:4–17, 115:9–25. On June 26, Pascual sent Khan a message about Plaintiff, stating in relevant part "[i]f he calls you just pass him down the same road as [Okamoto] did." *See* Dkt. # 144-6, Ex. 44.

Between July and October, Defendant and Beowulf continued to negotiate a transaction involving the Hardin facility with the help of O'Rourke and Pascual. *See DSUF* ¶¶ 3, 41; *PSGI* ¶¶ 3, 41, 72; *DRPS* ¶ 72. In early October, Defendant closed the deal with Beowulf, which involved entering into three agreements with affiliates of Beowulf and 2P1 ("Beowulf

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

transaction"). *See DSUF* ¶ 42; *PSGI* ¶¶ 42, 75; *DRPS* ¶ 75. Among other terms, Defendant had the right to purchase up to 100 MW of energy for at least five years at a cost of $0.028 per kilowatt hour and Beowulf and 2P1 were responsible for services including designing and developing a data center. *See DSUF* ¶ 42; *PSGI* ¶ 42. As part of the deal, Defendant issued 3 million shares of its common stock each to Beowulf and 2P1. *See DSUF* ¶ 43; *PSGI* ¶ 43.

In January 2021, Plaintiff filed suit in state court, asserting six causes of action:

First Cause of Action: Breach of written contract. *Complaint*, Dkt. # 1-1, ¶¶ 11–15.

Second Cause of Action: Breach of implied contract. *Id.* ¶¶ 16–20.

Third Cause of Action: Quasi-contract. *Id.* ¶¶ 21–22.

Fourth Cause of Action: Services rendered. *Id.* ¶¶ 23–24.

Fifth Cause of Action: Intentional interference with prospective economic relations. *Id.* ¶¶ 25–32.

Sixth Cause of Action: Negligent interference with prospective economic relations. *Id.* ¶¶ 33–39.

Defendant removed to this Court, *see generally* Dkt. # 1, and now moves for summary judgment as to each of Plaintiff's claims, *see generally Mot*.

II.   Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

III.   Evidentiary Objections

Plaintiff and Defendant each assert numerous evidentiary objections along with their opposition and reply briefs. *See generally* Dkts. # 130-12; 155-2. To the extent that the Court relies on objected-to evidence, it relies on only admissible evidence and, therefore, **OVERRULES** the objections. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

IV.   Requests for Judicial Notice

Along with its motion, Defendant filed a request for judicial notice of several news articles from online sources and a printout from a social media profile. *See generally* Dkt. # 88-3. Plaintiff opposes this request on the ground that these items are not properly authenticated or proper subjects of judicial notice. *See generally* Dkt. # 88-4.

Courts may refuse to take judicial notice of documents that have not been authenticated. *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002). However, under Federal Rule of Evidence 902(6), "[n]ewspaper articles are self-authenticating." *SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, No. CV 10–03024 MMM (FFMx), 2011 WL 13214280, at *10 n.70 (C.D. Cal. Jan. 31, 2011) (citing Fed. R. Evid. 902(6)). For online news articles, courts consider whether the articles "contain sufficient indicia of authenticity, including distinctive newspaper and website designs, dates of publication, page numbers, and web addresses." *Ciampi v. City of Palo Alto*, 790 F. Supp. 2d 1077, 1091 (N.D. Cal. 2011). Here, the online

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

news articles presented by Defendant include distinctive website designs, publication dates, page numbers, and web addresses. *See* Dkt. # 88-7, Exs. 200–205. Thus, the Court finds that these news articles contain sufficient indicia of authenticity to support their admissibility.

Under Federal Rule of Evidence 201, a court may take judicial notice of facts not subject to reasonable dispute because they (1) are generally known within the court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Pursuant to Rule 201(b), courts may take judicial notice of news articles to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citation omitted); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013) (granting request to take judicial notice of newspaper, magazine articles, and web pages to indicate what was in the public realm); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 812–13 (N.D. Cal. 2020) (taking judicial notice of online news report and blog post, but not for the truth of their contents). The Court accordingly **GRANTS** Defendant's request to take judicial notice of Exhibits 200, 201, 202, and 203—online news articles from the Associated Press and the Billings Gazette—to indicate what was in the public realm at the time the articles were published. As to the remaining items Defendant offers, the Court does not find these items necessary for deciding the instant motion and therefore need not take judicial notice of them.

Plaintiff also filed a request for judicial notice of search results from the websites of the Delaware Division of Corporations and Puerto Rico Registry of Corporations and Entities. *See generally* Dkt. # 128-3. While the Court recognizes that these items are likely proper subjects for judicial notice, it does not find the items necessary for deciding this motion and therefore need not take judicial notice of them.

V.    Discussion

The Court addresses Plaintiff's causes of action in turn.

A.    First Cause of Action: Breach of Written Contract

Under California law,[3] a plaintiff alleging breach of contract must prove "(1) the existence of the contract, (2) [the] plaintiff's performance or excuse for nonperformance, (3)

---

[3] The NDA states that it "shall be governed by the laws of the State of California." *NDA* ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

[the] defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Defendant argues that Plaintiff's breach of contract claim fails because (i) there was no mutual assent to support formation of a contract, (ii) Plaintiff did not provide consideration, (iii) Plaintiff never performed, (iv) Defendant did not breach the NDA, (v) Plaintiff's damages are speculative, (vi) if Plaintiff were entitled to a commission under the NDA, it would render the NDA unenforceable, and (vii) the non-circumvention clause is unenforceable.  The Court addresses each argument in turn.

> #### i.    Mutual Assent

Contract formation requires the parties' mutual assent, which "is accomplished when a specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the offeror."  *Sanchez v. Aurora Loan Servs., LLC*, No. CV 13-8846 MMM (RZx), 2014 WL 12589659, at *17 (C.D. Cal. Mar. 11, 2014) (citation omitted).

The Court begins by determining whether the NDA is a unilateral or bilateral contract. Plaintiff contends that the NDA is a bilateral contract, *see Opp.* 11:22–26, while Defendant claims that it is a unilateral contract, *see Reply* 7:21–8:10.

"A bilateral contract is one in which there are mutual [legally binding] promises given in consideration of each other."  *Bleecher*, 29 Cal. 3d at 350.  In contrast, "a unilateral contract involves the exchange of a promise for a performance.  The offer is accepted by rendering a performance rather than providing a promise."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012) (citing *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (1987)). Mindful of the California Supreme Court's guidance that "if a contract is capable of two constructions, the court must choose that interpretation which will make the contract legally binding if it can be so construed without violating the intention of the parties," *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981), the Court finds the NDA to be a unilateral contract.

Here, although the NDA contemplates that either party may be a Disclosing Party or a Receiving Party, *see generally NDA*, neither party is required to be a Disclosing Party.  Instead, the NDA states that the Disclosing Party "may disclose" Proprietary Information to the Receiving Party.  *See id.*  Thus, the Disclosing Party's promise to share Proprietary Information is merely illusory.  *See Mattei v. Hooper*, 51 Cal. 2d 119, 122 (1958) ("[I]f one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration.").  And the Receiving

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

Party's obligations with respect to use of Proprietary Information only become effective once the Disclosing Party accepts the offer and renders performance by disclosing Proprietary Information. *See generally NDA.* As such, the Court finds the NDA to be a unilateral contract in which Defendant made legally binding promises, including to keep any Proprietary Information confidential and to only use it for the NDA's stated purpose, *see NDA* ¶¶ 1–3, 5, in exchange for Plaintiff's act of disclosing Proprietary Information.

Turning to mutual assent, the Court finds that Defendant communicated a specific offer when Okamoto sent Plaintiff a signed and revised version of the NDA. *See* Dkt. # 144-4, Ex. 11. As a unilateral contract, the manner for Plaintiff to accept this offer was by performance—i.e., sharing Proprietary Information. *See Sateriale*, 697 F.3d at 785.

Defendant contends that Plaintiff never performed because (a) Plaintiff did not designate any of the information he shared with Okamoto as confidential, (b) the information Plaintiff shared with Okamoto falls under an exception outlined in Paragraph 4 of the NDA, and (c) at least some of the information Plaintiff shared with Okamoto was publicly known. *Mot.* 17:3–19:11. The Court considers each argument in turn.

a. *Designation as Proprietary Information*

Plaintiff contends that the information he shared with Okamoto about the opportunity for a transaction with Beowulf, "including Beowulf's identity, location, timeline for energy deployment and construction, rough pricing, and capital expenditures," qualifies as Proprietary Information. *Opp.* 13:4–7. Defendant does not dispute that the information Plaintiff shared with Okamoto falls under the NDA's definition of Proprietary Information, which includes "ideas . . . and other technical, business, financial and product development plans, forecasts, strategies and information." *See NDA.* Instead, Defendant argues that the information shared by Plaintiff does not qualify as Proprietary Information because Plaintiff did not designate it as confidential when sharing it with Defendant. *Mot.* 17 n.4. The NDA states that:

All Proprietary Information shall be protected and safeguarded if it is (a) marked as the Disclosing Party's confidential or proprietary information (or with an equivalent legend) at the time of disclosure, if disclosed in tangible form; or (b) identified as Proprietary Information at the time of disclosure. Notwithstanding the failure of the Disclosing Party to mark information as confidential or proprietary as described above, information that, by its very nature, or under the particular circumstances of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|----------|----------------------|------|-------------------|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

disclosure, should reasonably be understood to be confidential or proprietary, shall be deemed to be Proprietary Information.

*NDA.* The Court concludes that a jury could reasonably find that the information Plaintiff shared with Okamoto was Proprietary Information for two reasons.

First, a jury could reasonably conclude that the information Plaintiff shared "should reasonably be understood to be confidential or proprietary" given the nature of the information or the circumstances of Plaintiff's disclosure. *See NDA.* The record indicates that Plaintiff mentioned a potential opportunity in Montana to Okamoto before signing the NDA, but it is undisputed that Plaintiff would not tell Okamoto the name of the company until Okamoto agreed to sign an NDA. *See* Dkt. # 144-4, Ex. 9; *DSUF* ¶ 15; *PSGI* ¶ 15. Only after the parties signed the NDA did Plaintiff e-mail Okamoto with his "notes" about the potential transaction. *See* Dkt. # 144-4, Ex. 14. Similarly, Plaintiff did not disclose Beowulf's name or specific location until after the parties signed the NDA. *See PSGI* ¶ 62; *DRPS* ¶ 62; *Ho Decl.* ¶ 39; Dkt. # 144-4, Ex. 9. Based on this evidence, a jury could reasonably conclude that the information Plaintiff shared with Okamoto about a potential transaction with Beowulf "should reasonably be understood to be confidential or proprietary" because of "the particular circumstances of disclosure," and thus Proprietary Information under the NDA. *See NDA.*

Second, as Plaintiff argues, each of his e-mails to Okamoto containing information about Beowulf contained a confidentiality footer. *See Opp.* 14 n.6. Defendant argues that use of a standard confidentiality footer "does not meet the designation standards of the NDA," but it does not cite any authority to support this proposition. *See Mot.* 17 n.1. A jury could reasonably conclude that use of such a confidentiality footer is insufficient to qualify as marking the information Plaintiff shared as "confidential or proprietary information . . . at the time of disclosure." *See NDA.* Yet, viewing the evidence in the light most favorable to Plaintiff, a jury could also reasonably conclude that this confidentiality footer suffices to designate the information Plaintiff shared with Okamoto as Proprietary Information.

### b.       *Paragraph 4 of the NDA*

Defendant contends that the information Plaintiff shared with Okamoto does not qualify as Proprietary Information because it falls under the exceptions outlined in Paragraph 4 of the NDA because O'Rourke and Pascual independently shared similar energy pricing information with Defendant. *Mot.* 17:9–18:5. The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

The NDA first sets forth the definition of Proprietary Information. *See NDA*. It then lists several obligations that the Receiving Party agrees to undertake with respect to Proprietary Information. *Id.* ¶¶ 1–3. Paragraph 4 states that:

> The Disclosing Party agrees that the foregoing obligations shall not apply with respect to information that (i) was in the possession of the Receiving Party or known by it prior to receipt from the Disclosing Party, or (ii) was rightfully disclosed to the Receiving Party by another person without restriction, or (iii) was independently developed by the Receiving Party without access to such Proprietary Information, or (iv) is required to be disclosed pursuant to any statutory or regulatory authority or court order . . .

*Id.* ¶ 4. But paragraph 4 does not limit the definition of Proprietary Information. Instead, the plain language of paragraph 4 indicates that "the foregoing obligations"—i.e., the obligations outlined in paragraphs 1 through 3—do not apply to information that falls under certain enumerated categories. *See id.* ¶¶ 1–4. Therefore, paragraph 4 indicates that even if information qualifies as Proprietary Information as defined by the NDA, if one of the exceptions in paragraph 4 applies, the Receiving Party is not limited in its use of such information by the obligations in paragraphs 1 through 3.

Defendant's interpretation of paragraph 4 as limiting the *definition* of Proprietary Information rather than limiting its use would make paragraph 4 redundant. If the information does not qualify as Proprietary Information, then there would be no need to limit the Receiving Party's obligations in paragraphs 1 through 3 with respect to Proprietary Information. The Court declines to adopt an interpretation that would render paragraph 4 superfluous. *See United Nat'l Ins. Co. v. Wuo*, No. SACV 20-86 JVS (DFMx), 2020 WL 9312378, at *5 (C.D. Cal. Nov. 18, 2020) ("[I]t is a well-established rule of contract interpretation that constructions that would render words or other provisions superfluous should be avoided."); Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Thus, the Court finds that the exceptions outlined in paragraph 4 do not affect the determination of whether Plaintiff performed under the NDA by sharing Proprietary Information with Defendant.

### c.      *Defendant's Remaining Arguments*

Finally, Defendant argues that the information Plaintiff shared with Defendant was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

confidential because (1) when Plaintiff shared Beowulf's name, he "simply directed Okamoto to Beowulf's public website," and (2) it was publicly known that Beowulf was looking for partners to develop a project at the Hardin facility. *Mot.* 18:16–19:9.

But the mere fact that *some* of the information Plaintiff shared with Defendant was publicly known or available does not mean that *all* of the information Plaintiff shared was publicly known or available. As described above, a jury reasonably could conclude that the combination of information Plaintiff shared with Okamoto—including not just Beowulf's name and website but also information about pricing, energy capacity, timeline, and other terms of a potential deal—qualifies as Proprietary Information under the NDA. Even if it was known in the public realm that Beowulf was seeking partners to develop a project at the Hardin facility, the news articles Defendant cites do not provide the kind of details about pricing, timeline, or other terms for a potential transaction that Plaintiff shared with Okamoto. *See generally* Dkt. # 88-7, Exs. 200–03.

In sum, the Court finds that a jury could reasonably conclude that Plaintiff provided Proprietary Information to Defendant, and by extension that Plaintiff accepted the unilateral contract by performance. *See Sateriale*, 697 F.3d at 785.

### ii.    Consideration

Consideration is an essential element of any valid contract. *See Longsheng Lei v. Amway Corp.*, No. CV 14–4022 RGK (AGRx), 2014 WL 12616570, at *3 (C.D. Cal. Sept. 25, 2014). In a unilateral contract, "any act or forbearance, including continuing to work in response to the [promisor's] unilateral promise, may constitute consideration for the promise." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000).

Defendant argues that Plaintiff never provided consideration because (a) Plaintiff's promise under the NDA was illusory, (b) Plaintiff did not share Proprietary Information, and (c) even if he did, Plaintiff did not provide new consideration. *Mot.* 15:5–19:27; *Reply* 8:11–10:12. The Court considers each argument in turn.

### a.    Illusory Promise

Defendant contends that Plaintiff's promise that he "may disclose" Proprietary Information cannot serve as consideration because it is an illusory promise. *Mot.* 14:17–17:2. For the reasons described above, the Court agrees that the NDA's statement that either party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|----------|------------------------|------|-------------------|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

"may disclose" Proprietary Information, *see NDA*, is merely an illusory promise because neither party assumed a legally binding promise to disclose Proprietary Information. *See Mattei*, 51 Cal. 2d at 122. Thus, Plaintiff did not provide consideration by promising to disclose Proprietary Information through the NDA.

       *b.*     *Sharing of Proprietary Information*

     Defendant contends that Plaintiff did not provide consideration by sharing information about Beowulf because the information Plaintiff disclosed was not Proprietary Information, for the same reasons discussed above. *Mot.* 17:3–19:11.

     The Court has addressed Defendant's arguments and determined that a jury could reasonably conclude that Plaintiff provided Proprietary Information to Defendant. A jury could also reasonably conclude that Plaintiff's act of disclosing Proprietary Information was valid consideration for Defendant's promises to keep the Proprietary Information confidential, only use it for the purposes stated in the NDA, and not share it with others besides its employees and advisors, as well as Defendant's promise not to circumvent Plaintiff from dealings with business contacts shared by Plaintiff. *See NDA* ¶¶ 1–3, 5; *Broadstream Cap. Partners, Inc. v. Penthouse Media Grp.*, No. CV 08–1057–VBF (FFMx), 2009 WL 10671852, at *3 (C.D. Cal. Apr. 13, 2009) (explaining that, if the non-disclosure agreement was read as a unilateral contract, plaintiff's "act of providing confidential information is the act constituting consideration for [defendant's] promise").

       *c.*     *Past Consideration*

     Defendant argues that any Proprietary Information Plaintiff disclosed is not valid consideration for new promises in the NDA because Plaintiff was already compensated to provide such information under the Consulting Agreement. *Mot.* 19:12–27.

     In general, "[p]ast consideration cannot support a contract." *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (1997).

     Even if Defendant could show that the Proprietary Information provided by Plaintiff fell within the scope of the Consulting Agreement, Defendant's argument fails because Plaintiff was not a party to the Consulting Agreement. Instead, the Consulting Agreement was entered between Defendant and Caerus and states that Defendant will pay Caerus 150,000 shares of its common stock in consideration for the services rendered under the agreement. *See generally*

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

*Consulting Agr.* The NDA, by contrast, was entered between Defendant and Plaintiff. *See generally NDA.* As Plaintiff argues, Defendant "offers no basis to disregard Caerus's separate corporate existence" and deem Plaintiff bound by the Consulting Agreement. *See Opp.* 12:24–13:1.

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). A court may apply the alter ego doctrine to "disregard the corporate entity and treat the corporation's act's as if they were done by the persons actually controlling the corporation" if the plaintiff makes the necessary showing. *Zhejiang Crafab Elec. Co., Ltd. v. Advantage Mfg., Inc.*, No. SACV 17-02268 JVS(JPRx), 2018 WL 6177952, at *2 (C.D. Cal. Apr. 23, 2018) (quoting *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997)). Here, however, Defendant makes no showing that the alter ego doctrine should apply to disregard Caerus's existence as a distinct corporate entity from Plaintiff.

Defendant's conclusory response that "[t]he Consulting Agreement binds [Plaintiff] as Caerus' representative," *Reply* 10 n.1, does not suffice to demonstrate that Plaintiff was personally bound by the agreement because Defendant does not provide any evidence to indicate that Plaintiff falls within the Consulting Agreement's provision that the agreement "shall insure to the benefit of, and shall be binding upon, the parties hereto and their respective successors, permitted assigns, heirs and *legal representatives*," *Consulting Agreement* ¶ 9 (emphasis added). Thus, the Court is unconvinced by Defendant's argument that any Proprietary Information Plaintiff shared under the NDA was merely past consideration for Caerus's promises under the Consulting Agreement.

In sum, Plaintiff has provided sufficient evidence to raise a genuine dispute as to the existence of a valid unilateral contract based on Okamoto's offer, Plaintiff's acceptance by performance, and valid consideration to survive summary judgment as to the first element of his breach of contract claim. *See Oasis W. Realty*, 51 Cal. 4th at 821.

### iii.    Plaintiff's Performance

The next element Plaintiff must establish is his "performance or excuse for nonperformance." *Oasis W. Realty, LLC v*, 51 Cal. 4th at 821.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

As described above, a jury could reasonably conclude that Plaintiff performed under the NDA by providing Defendant with Proprietary Information about a potential transaction with Beowulf.  Thus, the Court finds that Plaintiff raises sufficient genuine disputes about his performance to survive summary judgment as to the second element of his breach of contract claim.  *See Oasis W. Realty, LLC v*, 51 Cal. 4th at 821.

        *iv.*    *Defendant's Breach*

Plaintiff argues that Defendant breached the NDA by violating the non-circumvention clause.  *Opp.* 15:8–16:18.  Defendant counters that it did not breach the NDA because paragraph 4 should be interpreted as exempting Defendant from the non-circumvention clause in paragraph 5.  *Mot.* 21:17–27; *Reply* 12:12–13:3.  The Court disagrees with Defendant.

Under California law, a contract is to be interpreted so as "to give effect to the mutual intention of the parties as it existed at the time of contracting."  Cal. Civ. Code § 1636.  When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, "if the language is clear and explicit, and does not involve an absurdity."  *See id.* §§ 1638–39.  However, "the fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms."  *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39 (1968).  "Parol evidence is properly admitted to construe a contract only when its language is ambiguous."  *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010).  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1066-67 (9th Cir. 2011) (quoting *Pac. Gas & Elec. Co.*, 69 Cal. 2d at 37).

Contract interpretation therefore involves a two-step process by which the court:

[first] provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity'—i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party.  If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step – interpreting the contract.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

*See F.B.T.*, 621 F.3d at 963 (quoting *Winet v. Price*, 4 Cal. App. 4th 1159 (1992)).  If the evidence is not in conflict or if the court interprets the contract without considering extrinsic evidence, the court's determination is a question of law appropriate for summary judgment.  *See Winet*, 4 Cal. App. 4th at 1165; *Wolf v. Superior Ct.*, 114 Cal. App. 4th, 1343, 1351 (2004).  Only when the parol evidence is in conflict and the conflict raises issues of credibility is it appropriate for resolution by a jury.  *City of Hope Nat'l Med. Ctr. V. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008) ("[T]he jury may interpret an agreement when construction turns on the credibility of extrinsic evidence.").

"It is appropriate to begin this investigation with a review of the literal terminology of the contract."  *Winet*, 4 Cal. App. 4 at 1166; *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("Whenever possible, the plain language of the contract should be considered first.").  Paragraph 4 of the NDA states:

> The Disclosing Party agrees that the foregoing obligations shall not apply with respect to information that (i) was in the possession of the Receiving Party or known by it prior to receipt from the Disclosing Party, or (ii) was rightfully disclosed to the Receiving Party by another person without restriction, or (iii) was independently developed by the Receiving Party without access to such Proprietary Information, or (iv) is required to be disclosed pursuant to any statutory or regulatory authority or court order. . . .

*NDA* ¶ 4.  Then, the non-circumvention clause in paragraph 5 states:

> During the term of this Agreement, neither party shall attempt to do business with, or otherwise solicit any business contacts found or otherwise referred by Disclosing party to Receiving Party for the purpose of circumventing, the result of which shall be to prevent the Disclosing Party from realizing or recognizing a profit, fees or otherwise, without the specific written approval of the Disclosing Party.  If such circumvention shall occur the Disclosing Party shall be entitled to any commissions due pursuant to this Agreement or relating to such transaction. . . .

*Id.* ¶ 5.  Plaintiff argues that the term "foregoing" unambiguously means that paragraph 4's exceptions apply to obligations outlined in the preceding paragraphs—i.e., paragraphs 1 through 3—and not to the non-circumvention clause in paragraph 5.  *See Opp.* 15:4–7.  Defendant contends that such an interpretation is inconsistent with the parties' intent and would lead to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

absurd result and instead urges that paragraph 4 should be read to apply to the non-circumvention clause such that Defendant cannot be liable for circumventing Plaintiff from its dealings with business contacts referred to it by both Plaintiff and another person—i.e., O'Rourke. *See Mot.* 21:17–22:1; *Reply* 12:2–13:13.

The NDA does not define the word "foregoing," so the Court begins by looking at the ordinary meaning of the word. *See F.B.T.*, 621 F.3d at 964. In the ordinary sense of the word, "foregoing" refers to something that has previously been mentioned or occurred. *See* Merriam-Webster Online Dictionary, 2022, https://www.merriam-webster.com/dictionary/foregoing (Feb. 5, 2022) (defining "foregoing" as "listed, mentioned, or occurring before"). Thus, the Court finds that Plaintiff's interpretation of "foregoing" as referring to terms listed in the paragraphs preceding paragraph 4 comports with the plain meaning of the word, which points decidedly in favor of interpreting paragraph 4's exceptions not to limit the non-circumvention clause in the subsequent paragraph 5.

However, the Court considers whether extrinsic evidence submitted by the parties is relevant to showing that paragraph 4's language is reasonably susceptible to the interpretation urged by Defendant. *See First Nat. Mortg. Co.*, 631 F.3d at 1066–67. Defendant contends that "[c]learly, the intent of the parties is to protect any proprietary information disclosed by [Plaintiff], but where such information falls within the carveouts of par[agraph] 4, [Defendant] is not bound by the NDA's obligations." *Id.* 13:1–3. But Defendant points to no extrinsic evidence of the parties' intent or negotiations to support this conclusory statement. *See Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (2006) ("Extrinsic evidence can include the surrounding circumstances under which the parties negotiated or entered into the contract [and] the object, nature and subject matter of the contract"). Although the record shows that Defendant communicated an intent to revise paragraph 3 to allow it to share Proprietary Information with its advisors, and that the parties accordingly revised the NDA, *see* Dkt. # 144-4, Ex. 11; *DSUF* ¶ 20; *PSGI* ¶ 20, Defendant does not point to any extrinsic evidence of the parties' intent or negotiations for paragraph 4's limitations to apply to the non-circumvention clause. It is well established that it is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. *Winet*, 4 Cal. App. 4th at 1166. As such, even if Defendant subjectively intended for paragraph 4 to apply to the non-circumvention clause, such "undisclosed intent or understanding is irrelevant to contract interpretation." *Cedars-Sinai Med. Ctr.*, 137 Cal. App. 4th at 980.

Defendant argues that the plain language interpretation of paragraph 4 would lead to the absurd conclusion that it could be prohibited from pursuing a deal with Beowulf if Defendant obtained Beowulf's identity from both Plaintiff and another source. *Reply* 12:22–27. Under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.  If an interpretation based on the contract's clear language would lead to an absurd result, courts "look to the reasonable expectations of the parties at the time of contract" to interpret the contract. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717–18 (9th Cir. 2020) (citing *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 831–32 (2007)).  The reasonable expectation of the parties is determined by "the totality of the circumstances," including "the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." *Kashmiri*, 156 Cal. 4th at 832 (internal quotations and citation omitted).

Even if interpreting paragraph 5 to prevent Defendant from circumventing Plaintiff from a deal with a business contact also disclosed by another source would be an absurd result, as Defendant contends, Defendant provides no indication that the parties reasonably expected otherwise at the time of contracting.  Instead, the record indicates that Plaintiff insisted on executing the NDA before he would disclose Beowulf's identity and details about the potential transaction, *see DSUF* ¶ 15; *PSGI* ¶ 15; Dkt. # 144-4, Ex. 14, and Defendant does not point to any act, conduct, or other indication suggesting that it reasonably expected to be able to circumvent Plaintiff from a deal involving Beowulf if other sources also told Defendant about Beowulf.  Thus, the Court does not find that the parties' acts and conduct or the circumstances surrounding contracting indicate that the parties reasonably expected paragraph 4's limitations to apply to the non-circumvention clause.  *See Kashmiri*, 156 Cal. App. 4th at 832; *cf. Revitch*, 977 F.3d at 717–18.  The Court thus declines to depart from the plain language interpretation of paragraph 4.

Based on the NDA's plain language and provisional consideration of the extrinsic evidence submitted by the parties, the Court concludes that paragraph 4 is not reasonably susceptible to the meaning offered by Defendant.  *See F.B.T.*, 621 F.3d at 963.  Instead, the Court determines as a matter of law that the use of the word "foregoing" limits the application of paragraph 4's exceptions to the preceding paragraphs—i.e., paragraphs 1 through 3—but does not limit the application of the non-circumvention clause found in paragraph 5.  *See id.*; *Winet*, 4 Cal. App. 4th at 1165; *Wolf*, 114 Cal. App. 4th at 1351.

Accordingly, Plaintiff can demonstrate that Defendant breached the non-circumvention clause by "attempt[ing] to do business with, or otherwise solicit[ing] any business contacts found or otherwise referred by [Plaintiff] to [Defendant] for the purpose of circumventing," regardless of whether another party also shared the same business contacts with Defendant.  *See NDA* ¶ 5.

On this record, a jury could reasonably conclude that Beowulf was a "business contact[]"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

found or otherwise referred by [Plaintiff] to [Defendant]" and that Defendant breached the non-circumvention clause by cutting off communication with Plaintiff and instead pursuing a deal with Beowulf through the help of O'Rourke and Pascual. *See NDA* ¶ 5. Although both Plaintiff and Pascual were exploring potential opportunities for the Beowulf facility, *see* Dkt. # 144-3, Ex. 4; *Pascual Depo. Excerpts* 103:10–24; *Khan Depo. Excerpts* 24:4–8, 42:23–44:4, Okamoto testified that the first time he heard Beowulf's name was when Plaintiff disclosed it to him, *Okamoto Depo. Excerpts* 182:17–24, 229:16–22. O'Rourke's testimony is unclear as to whether he had previously spoken to Okamoto about Beowulf, *see O'Rourke Depo. Excerpts* 94:6–9, 94:19–97:24, 107:8–10, but the Court will not make credibility determinations or weigh conflicting evidence at summary judgment. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31.

The record contains evidence indicating that after Plaintiff disclosed Beowulf's name and information about a potential deal to Okamoto between June 9 and 15, *see* Dkt. # 144-4, Ex. 14; *PSGI* ¶ 62; *DRPS* ¶ 62, Okamoto called O'Rourke to discuss the potential opportunity, *Pl. Okamoto Depo. Excerpts* 183:12–184:2, discussed a potential transaction with both Plaintiff and O'Rourke for a few days, *see PSGI* ¶ 68; *DRPS* ¶ 68, but then chose to pursue the deal through O'Rourke and Pascual rather than Plaintiff, *see PSGI* ¶ 67; *DRPS* ¶ 67, thereby ceasing all communications with Plaintiff, *see PSGI* ¶ 69; *DRPS* ¶ 69; *see* Dkt. # 144-4, Ex. 9 at 30. A jury could reasonably conclude that Defendant chose to pursue a deal with Beowulf through O'Rourke and Pascual for purposes other than circumventing Plaintiff, such as (1) because O'Rourke indicated that he had a better "in" with Beowulf—i.e., Pascual—*see* Dkt. # 144-5, Ex. 32; *PSGI* ¶ 67; *DRPS* ¶ 67; (2) because O'Rourke quoted a lower rate than that quoted by Plaintiff, *see* Dkt. # 144-6, Ex. 36; or (3) because Plaintiff did not provide the documents Okamoto requested about the potential transaction, *see DSUF* ¶ 30; *PSGI* ¶ 30. However, viewing the evidence in the light most favorable to Plaintiff, a jury could also conclude that Defendant did so for the purpose of circumventing Plaintiff and keeping him from profiting from the eventual Beowulf transaction, given that Plaintiff contends his June 9 e-mail outlined his proposed compensation for the potential transaction, *see PSGI* ¶ 21.

Accordingly, Plaintiff has raised a genuine dispute as to whether Defendant breached the non-circumvention clause by pursuing a deal with Beowulf without Plaintiff after Plaintiff disclosed Beowulf's name.

*v.    Damages*

The final element Plaintiff must prove is that Defendant's breach resulted in damages to Plaintiff. *Oasis*, 51 Cal. 4th at 821. "Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

reasonable basis of computation of damages be used." *GHK Assocs. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873–74 (1990).

Defendant argues that Plaintiff's breach of contract claim fails because any damages Plaintiff suffered are speculative and cannot be proven with reasonable certainty. *Mot.* 22:2–20. However, Defendant's own expert testified that, assuming there is a breach, $150,000 would be reasonable compensation for the services contemplated by the NDA. *See Videotaped and Videoconference Deposition of John E. Alstadt*, Dkt. # 144-8, Ex. 64 ("*Alstadt Depo. Excerpts*"), 48:10–13, 133:16–20; *see also Rebuttal Report of Alstadt Consulting*, Dkt. # 144-8, Ex. 63 ("*Alstadt Report*"), 18. In other words, Defendant's own evidence undermines its argument that Plaintiff's damages are too speculative because its own expert was able to ascertain the reasonable value of Plaintiff's damages.

### vi.     *Enforceability of Plaintiff's Commission Under the NDA*

Defendant argues that if Plaintiff were entitled to a commission under the NDA, it would render the NDA void and unenforceable under federal securities laws. *Mot.* 13:26–14:22. The Court first addresses (a) whether Plaintiff is entitled to a commission under the terms of the NDA, and then considers (b) whether, if so, the NDA is void.

### a.     *Plaintiff's Entitlement to a Commission*

The non-circumvention clause states that "[i]f such circumvention shall occur the Disclosing Party shall be entitled to any commissions due pursuant to this Agreement or relating to such transaction." *NDA* ¶ 5. The parties agree that the NDA does not set forth the commissions Plaintiff would be due in the event of a breach of the non-circumvention clause. *See Mot.* 13:26–14:2; *Opp.* 21:11–18 & n.8; *Reply* 13:25–14:4. Yet, Plaintiff contends that he is entitled to a commission relating to the Beowulf transaction based on the commission Defendant paid to 2P1. *Opp.* 21:11–18 & n.8. Defendant counters that Plaintiff is not entitled to a commission relating to the Beowulf transaction because 2P1 was not paid a commission related to this transaction but rather was paid shares of Defendant's stock "pursuant to the terms of the contracts reached between [Defendant], 2P1 and Beowulf." *Reply* 13:25–14:4.

However, Defendant provides no authority for its proposition that payment in the form of stock cannot constitute a commission related to a transaction. Defendant contends that its payment to 2P1 was based in part on post-transaction services 2P1 provided, *see Reply* 14:1–4; *DSUF* ¶¶ 42–43; *DRPS* ¶ 76, but Defendant does not dispute that it paid 2P1 in stock "for putting the deal together." *See PSGI* ¶ 76; *DRPS* ¶ 76. Moreover, Defendant's reply states that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

it paid 2P1 "for . . . months of work in negotiating and ultimately consummating a transaction between [Defendant] and Beowulf resulting in payment of shares." *Reply* 15:23–26. And even if Defendant's payment to 2P1 was partly for post-transaction services, that does not necessarily mean that the payment was not also partly a commission for putting the Beowulf transaction together—i.e., a "commission . . . relating to [the] transaction," at least some portion of which Plaintiff would be entitled to upon a showing that Defendant breached the non-circumvention clause. *See NDA* ¶ 5. A jury could reasonably conclude that, if Defendant breached the non-circumvention clause, Plaintiff is entitled to some commission relating to the Beowulf transaction based on the payment Defendant made to 2P1.

b.     *Applicability of Federal Securities Laws*

Defendant next argues that, if the non-circumvention clause is read to entitle Plaintiff to a commission relating to the Beowulf transaction, it would render the NDA void under the Securities Exchange Act of 1934 ("Exchange Act"). *Mot.* 14:4–22. Defendant points to § 15(a) of Exchange Act, which makes it "unlawful for any broker or dealer . . . to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." *See* 15 U.S.C. § 78o(a)(1); *see also id.* § 78cc(b) (indicating that contracts made in violation of, or whose performance involves violation of, the Exchange Act or its accompanying regulations "shall be void"). Defendant contends that because Plaintiff is not registered as a broker, his attempt to earn a commission on the Beowulf transaction, which involved payment in stock, would render the NDA void under the Exchange Act. *See Mot.* 14:4–22; *Reply* 11:21–28.

The Court is unconvinced. Defendant provides no authority for the proposition that Plaintiff's attempt to earn a commission based on the Beowulf transaction, pursuant to the NDA's non-circumvention clause, would somehow turn the NDA into a contract involving a transaction in or the purchase or sale of securities. But even if Plaintiff's attempt to earn a commission on the Beowulf transaction were understood to entail Plaintiff effecting a transaction in securities or inducing the purchase or sale of securities, Defendant fails to show that Plaintiff should be treated as a "broker or dealer" who must be registered in order to earn such a commission. *See* 15 U.S.C. § 78o(a)(1). Plaintiff sets forth a number of reasons why he does not qualify as a broker or dealer under the Exchange Act and argues that Defendant "has submitted no evidence on the[] factors" courts consider to determine whether a person is a broker. *See Opp.* 18:10–19:1. Defendant's reply merely restates the assertion that Plaintiff is not registered as a broker or dealer under the Exchange Act without addressing why Plaintiff should be treated as a broker or dealer subject to the registration requirements. *See Reply*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

11:21–23.

Moreover, the record does not indicate that Plaintiff qualifies as a broker or dealer for purposes of the Exchange Act. The Exchange Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others," 15 U.S.C. § 78c(a)(4)(A), and defines a "dealer" as "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise," *id.* § 78c(a)(5)(A). In determining whether a person is a broker for purposes of § 15(a)(1) of the Exchange Act, courts use a "totality-of-the-circumstances approach," applying a nonexclusive list of factors including whether the person:

> (1) is an employee of the issuer of the security; (2) received transaction-based income such as commissions rather than a salary; (3) sells or sold securities from other issuers; (4) was involved in negotiations between issuers and investors; (5) advertis[ed] for clients; (6) gave advice or made valuations regarding the investment; (7) was an active finder of investors; and (8) regularly participates in securities transactions.

*SEC v. Hui Feng*, 935 F.3d 721, 731–32 (9th Cir. 2019) (citations omitted). "The most important factor is the person's regularity of participation in securities transactions at key points in the chain of distribution." *SEC v. Forester*, No. CV 20-9813 DMG (AFMx), 2021 WL 4803475, at *3 (C.D. Cal. Sept. 17, 2021) (cleaned up).

Here, Defendant has made no showing that Plaintiff qualifies as a broker under any of the applicable factors. Nor does the record indicate that Plaintiff regularly participates in securities transactions or that any of the other factors apply, beyond the second factor of receiving transaction-based income in the form of commissions. Accordingly, the Court concludes that Plaintiff does not qualify as a broker for purposes of the Exchange Act. *Cf. Feng*, 935 F.3d at 731–32 (affirming determination that defendant was acting as a broker because his conduct satisfied all but one of the factors and indicated that "much of the work [he] performed for his clients align[ed] with the indicia of broker activity"); *Forester*, 2021 WL 4803475, at *3 (finding that defendant qualified as a broker because all but one factor weighed in favor of finding that he was acting as a broker). Similarly, Defendant offers no argument as to why Plaintiff qualifies as a dealer under the Exchange Act, and the record does not indicate that Plaintiff is "engaged in the business of buying and selling securities" and thus a dealer. *See* 15 U.S.C. § 78c(a)(5)(A). As a result, it would not be unlawful for Plaintiff to earn a commission on the Beowulf transaction merely because he is not registered as a broker or dealer. *See id.* § 78o(a)(1); *cf.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

*Forester*, 2021 WL 4803475, at *3.

Thus, Defendant has provided no credible basis for finding the NDA void under the Exchange Act if the non-circumvention clause is read to entitle Plaintiff to a commission on the Beowulf transaction. *See* 15 U.S.C. § 78cc(b). The Court thus **DENIES** Defendant's motion for summary judgment that Plaintiff's breach of contract claim fails as a matter of law on the ground that the NDA violates the Exchange Act.

### vii.   *Enforceability of the Non-Circumvention Clause*

Defendant next argues that the non-circumvention clause is unenforceable because it is an illegal restraint on trade under California Business & Professions Code § 16600 by unlawfully restraining Defendant from engaging in business with business contacts disclosed by Plaintiff. *Mot.* 20:1–21:16. Plaintiff counters that § 16600 does not apply to the non-circumvention clause and that, if it did, Defendant has not shown that the clause is invalid under the standard applicable to commercial contracts. *Opp.* 19:4–20:4.

Under California law, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," with a few enumerated exceptions. Cal. Bus. & Prof. Code § 16600. The California Supreme Court recently confirmed that, although non-competition clauses through which an employer restrains a former employee's ability to engage in his or her profession, trade, or business are per se invalid under § 16600 unless an exception applies, courts should apply "a reasonableness standard to contractual restraints on business operations and commercial dealings." *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130, 1157–59 (2020). In commercial contracts, "as long as a noncompetition provision does not negatively affect the public interests, is designed to protect the parties in their dealings, and does not attempt to establish a monopoly, it may be reasonable and valid." *Quidel Corp. v. Superior Ct.*, 57 Cal. App. 5th 155, 166–68 (2020).

The Court begins by noting that § 16600 applies to the NDA's non-circumvention clause. *See Ixchel Pharma, LLC*, 9 Cal. 5th at 1149 ("[S]ection 16600 applies to business contracts."). Because the non-circumvention clause is found in a commercial contract and limits the ability of Defendant, a business, to solicit or do business with other businesses—rather than limiting an individual employee's ability to engage in his or her profession, trade, or business—the reasonableness standard applies. *See id.* at 1157–59. Under the reasonableness standard, Defendant fails to show that the non-circumvention clause negatively affects the public interest or attempts to establish a monopoly. *See Quidel Corp.*, 57 Cal. App. 5th at 168. Instead, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

non-circumvention appears "designed to protect the parties in their dealings" by preventing Defendant from circumventing Plaintiff from transactions involving business contacts Plaintiff referred to Defendant. *See id.* The circumstances surrounding the contract formation indicate that Plaintiff sought to enter the NDA before sharing the name of the business contact he was discussing with Okamoto—Beowulf—in order to keep Defendant from circumventing him from a potential transaction with Beowulf. *See DSUF* ¶ 15; *PSGI* ¶ 15 (indicating that Plaintiff would not disclose Beowulf's name until Okamoto agreed to sign the NDA).

Accordingly, Defendant has not demonstrated that the non-circumvention clause is an unreasonable restraint on trade, and the Court declines to find the non-circumvention clause invalid under § 16600. *See Ixchel Pharma, LLC*, 9 Cal. 5th at 1159; *Quidel Corp.*, 57 Cal. App. 5th at 168, 172. The Court therefore **DENIES** Defendant's motion for summary judgment on the basis that Plaintiff's breach of contract claim fails as a matter of law because the non-circumvention clause is an invalid restraint on trade.

> *viii.*    Conclusion

Because Plaintiff has demonstrated the existence of a genuine dispute of material fact as to each element of his breach of contract claim, and Defendant has failed to show that the NDA is void or that its non-circumvention clause is invalid, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's first cause of action.

> B.    Second Cause of Action: Breach of Implied Contract

An implied contract "is based on the conduct of the parties." *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 636 (2016) (citing Cal. Civ. Code § 1621)). As with a claim for breach of contract, to show a breach of implied contract, the plaintiff must prove (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; (4) and resulting damages to the plaintiff. *Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015). For an implied contract, "the promise is not expressed in words but is implied from the promisor's conduct." *Gomez v. Lincare, Inc*, 173 Cal. App. 4th 508, 525 (2009).

Defendant argues that Plaintiff's implied contract claim fails because (i) the parties did not agree for Plaintiff to be compensated for identifying Beowulf and providing notes about a potential transaction, and (ii) Plaintiff disclosed the information about Beowulf solely to induce Defendant to enter into a future business relationship. *Mot.* 23:10–24:8. The Court addresses each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

i.    *Expectation of Compensation for Disclosing Information*

Defendant argues that the parties did not agree for Plaintiff to be compensated for identifying Beowulf and providing information about a potential transaction. *Mot.* 23:12–16. Plaintiff counters that he reasonably expected to be compensated and that "[Defendant] expected to pay him—at least until it circumvented him." *Opp.* 23:9–15. As support, Plaintiff points to the fact that he insisted on the parties signing the NDA providing for a commission on the eventual transaction. *Id.* However, the NDA does not specify a commission for disclosure of any Proprietary Information; instead, it enables Plaintiff to obtain a commission related to a transaction from which Defendant circumvents him. *See generally NDA.* Thus, a jury could not reasonably conclude that Plaintiff's insistence on signing an NDA before he shared Beowulf's name and information about a potential transaction indicates that Plaintiff expected to be compensated solely for providing such information. Nor does Okamoto's agreement to sign the NDA indicate that Defendant reasonably expected to pay Plaintiff for sharing Beowulf's identity and the information about a potential deal.

Plaintiff points to no other evidence of the parties' words or conduct to indicate that Defendant promised to pay him for disclosing information about Beowulf. Rather, Plaintiff contends that his June 9 e-mail to Okamoto included proposed compensation for Plaintiff *if a deal were reached with Beowulf. See PSGI* ¶ 21. While this suggests that Plaintiff expected to be compensated for facilitating a transaction with Beowulf, it does not provide support for the notion that Plaintiff reasonably expected to be compensated for disclosing Beowulf's identity and information about a potential transaction.

Even if a jury could reasonably conclude that Plaintiff expected to be compensated for sharing Beowulf's name and the information about a potential transaction, Plaintiff fails to show that the parties' words or conduct indicate that they mutually agreed to such compensation. The cases Plaintiff cites do not stand for the proposition that the disclosing party's unilateral expectation of compensation creates an implied contract for compensation based on its disclosure of an idea or information to the receiving party. *See Minniear v. Tors*, 266 Cal. App. 2d 495, 504 (1968) (finding sufficient evidence to support existence of implied contract where there was substantial evidence that plaintiff shared its idea with the reasonable expectation of being paid *and* that defendant accepted the idea "with full awareness of [plaintiff's] expectation of payment in the event of use"); *Gunther-Wahl Prods., Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27, 42–43 (2002) (holding that a jury could find an implied contract existed where defendant "clearly invited" plaintiff to present its idea, even if plaintiff did not clearly condition its disclosure of an idea on defendant's agreement to pay); *Updateme Inc. v. Axel Springer SE*, 2017 WL 5665669, at *8 (N.D. Cal. Nov. 27, 2017) (finding allegations that, before plaintiff shared

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

specific information, defendants promised to use the information only for specific purposes sufficed to survive a motion to dismiss implied contract claim).

Here, by contrast, Plaintiff does not point to words or conduct indicating that Defendant promised to compensate Plaintiff for disclosing information about Beowulf or that Defendant reasonably understood that Plaintiff expected to be paid for Defendant's use of such information. Thus, based on the evidence in the record, a jury could not reasonably conclude that Defendant's conduct expressed a promise to pay Plaintiff for the disclosure of such information. *See Gomez*, 173 Cal. App. 4th at 525.

> ii.     *Inducement to Enter Into a Future Business Relationship*

Defendant contends that an implied contract was not created based on Plaintiff's disclosure of information to induce Defendant to enter into a transaction with Beowulf. *Mot.* 23:21–24:7. Plaintiff counters that what matters is not whether the disclosure was made for the purpose of inducing a future business relationship but rather whether the plaintiff expected to be paid for the disclosure. *Opp.* 23:16–24:2. The Court concludes that Plaintiff's claim fails regardless because Plaintiff does not provide evidence that he reasonably expected to be paid for the information he disclosed to Defendant or that the parties impliedly agreed that he would be compensated for disclosing such information.

"[N]o contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902–03 (9th Cir. 1987) (citing *Faris v. Enberg*, 97 Cal. App. 3d 309, 318–20 (1979)).

Plaintiff points to cases that have since distinguished *Aliotti* and *Faris*, but those cases do not support his position because they are also distinguishable from the instant case. In *Gunther-Wahl Productions, Inc.*, the court distinguished *Aliotti* and *Faris* on the grounds that the plaintiff expected payment for disclosing its ideas to the defendant. 104 Cal. App. 4th at 42. Here, by contrast, Plaintiff points to no evidence indicating that he expected to be compensated for his disclosure of information about Beowulf rather than for his role in facilitating an eventual transaction with Beowulf. Similarly, although *Goodness Films, LLC v. TV One, LLC* also distinguished *Aliotti* and *Faris*, the court there found a genuine dispute of material fact as to "whether it was understood and impliedly agreed—*before* [the idea was disclosed]—that the materials would not be used or disclosed for any purpose unless [the disclosing parties] were compensated." No. CV 12-8688-GW(JEMx), 2013 WL 12306439, at *10–11 (C.D. Cal. Oct. 21, 2013). Plaintiff has raised no such genuine dispute here as to whether he and Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|----------|-----------------------|------|-------------------|

| Title | Michael Ho v. Marathon Patent Group, Inc. et al. |
|-------|---------------------------------------------------|

impliedly agreed that Plaintiff would be compensated for his disclosure of information about Beowulf. Instead, Plaintiff's own description of his June 9 e-mail as outlining proposed compensation for Plaintiff if Defendant entered into a transaction with Beowulf, *PSGI* ¶ 12, supports an understanding that Plaintiff disclosed the information about Beowulf not to be compensated for providing such information but rather to induce Defendant to enter into a future transaction with Beowulf, *see Aliotti*, 831 F.2d at 902–03.

In sum, Defendant has highlighted an absence of evidence to support the existence of an implied contract and Plaintiff has therefore failed to raise a genuine issue of material fact to support the first element of his breach of implied contract claim. *See Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248. The Court accordingly **GRANTS** Defendant's motion for summary judgment as to Plaintiff's second cause of action.

C.   Third and Fourth Causes of Action: Quasi-Contract and Services Rendered

Plaintiff's third cause of action is a quasi-contract claim and his fourth cause of action is for services rendered—i.e., a quantum meruit claim. *See E.J. Fanks Constr., Inc. v. Sahota*, 226 Cal. App. 4th 1123, 1128 (2014) ("[Q]uantum meruit is equitable payment for services already rendered.").

"[Q]uantum meruit and quasi-contract theories are not distinct species of equitable recovery, but rather interchangeable terms used to describe a claim based on an implied-in-law contract to recover an unjustly retained benefit." *McIlwain v. Brown*, No. CV 18-5275-DMG (SKx), 2020 WL 11232927, at *2 (C.D. Cal. Mar. 24, 2020) (collecting cases); *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant."). To prove a quasi-contract or quantum meruit claim, the plaintiff must show that (1) the defendant received a benefit, and (2) it would be unjust for the defendant to retain the benefit at the plaintiff's expense. *See McIlwain*, 2020 WL 11232927, at *2. The defendant must have "knowingly accepted [the benefit] under circumstances that make it inequitable for the defendant to retain [it] without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009).

Defendant argues that Plaintiff's quasi-contract and services rendered claims fail because (i) Plaintiff provided no benefit to Defendant, and (ii) Defendant was not unjustly enriched by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

the information Plaintiff disclosed about Beowulf. *See Mot.* 24:9–27:10; *Reply* 15:1–28. The Court considers each argument in turn.

i.      *Plaintiff's Provision of a Benefit*

Defendant first contends that Plaintiff provided no benefit and rendered no services that he was not already compensated for under the Consulting Agreement. *Mot.* 24:15–20, 25:20–27. Because the Court has already rejected Defendant's argument that Plaintiff was a party to the Consulting Agreement, this argument fails.

Next, Defendant argues that Plaintiff did not provide a benefit to Defendant because O'Rourke and Pascual had access to the same information as Plaintiff and independently negotiated the Beowulf transaction—with different terms than those proposed by Plaintiff—without the help of Plaintiff's services. *Mot.* 24:20–28, 26:2–4; *Reply* 15:4–28. Plaintiff counters that he provided valuable information to Defendant, which he developed "at significant expense of time and money," and which Defendant used to pursue the Beowulf transaction. *Opp.* 24:13–17, 25:20–22.

The record indicates that Plaintiff spent several months exploring opportunities for a cryptocurrency mining operation at Beowulf's Hardin plant, including numerous conversations with Khan and a trip to visit the site in person. *See DSUF* ¶ 8; *PSGI* ¶ 8; Dkt. # 144-3, Exs. 4, 8; *Pl. Pascual Depo. Excerpts* 103:10–24; *Pl. Khan Depo. Excerpts* 24:4–8, 42:23–44:4. While Pascual was also involved in many of these efforts, the record also indicates that it was Plaintiff, and not Pascual, who disclosed Beowulf's identity to Defendant. *See Pl. Okamoto Depo. Excerpts* 182:17–24, 229:16–22 (indicating that Plaintiff first disclosed Beowulf's name to Okamoto); *Pl. Pascual Depo. Excerpts*) 57:9–11, 84:2–8 (testifying that Pascual was never in contact with Defendant and has not spoken with or met Okamoto). Plaintiff then disclosed Beowulf's identity as well as information about pricing, energy capacity, timeline, and other terms for a potential deal to Okamoto. *See* Dkt. # 144-4, Ex. 14; *PSGI* ¶ 62; *DRPS* ¶ 62.

Viewing the evidence in the light most favorable to Plaintiff, a jury could find that Defendant contacted O'Rourke and began working with him and Pascual on the Beowulf transaction as a result of the information Plaintiff shared, even if the ultimate transaction involved terms that differed from those proposed by Plaintiff. In other words, a jury could reasonably conclude that Defendant received a benefit from the information Plaintiff disclosed. Moreover, Defendant's own expert valued the services Plaintiff rendered under the NDA—i.e., disclosing Proprietary Information—at $150,000, *see Alstadt Depo. Excerpts* 48:10–13,

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

133:16–20, reinforcing the notion that Plaintiff provided valuable services and a benefit to
Defendant.  The fact that O'Rourke and Pascual provided additional information or services than
those provided by Plaintiff does not negate the possibility that Plaintiff also conferred a benefit
on Defendant.  Thus, the Court finds that a jury could reasonably find the first element of
Plaintiff's claims met.

ii.      *Defendant's Unjust Enrichment*

Defendant next argues that it was not unjustly enriched because Plaintiff did not provide
valuable information or participate in negotiating the Beowulf transaction.  *Mot.* 25:3–7.
Essentially, Defendant argues that it received no benefit from Plaintiff and thus that it "enjoyed
no unjust enrichment."  *Reply* 15:13–14.

For the reasons described above, a jury could reasonably conclude that Defendant
received a benefit from Plaintiff's disclosure of Beowulf's identity and information about a
potential transaction.  Aside from arguing that Plaintiff was already compensated under the
Consulting Agreement—an argument the Court has repeatedly rejected—Defendant does not
contend that it has compensated Plaintiff for this information.  A jury could reasonably conclude
that it would be unjust for Defendant to retain the benefit of the information Plaintiff disclosed
without compensating Plaintiff.  *See McIlwain*, 2020 WL 11232927, at *2.  A jury could also
conclude that, given the circumstances surrounding the parties' entrance into the NDA and
Plaintiff's disclosure of Beowulf's identity and other information, Defendant knowingly
accepted this information such that it would be inequitable for Defendant to retain the benefits of
the information Plaintiff shared without paying for the value of this information.  *See
Hernandez*, 180 Cal. App. 4th 938.  Thus, the Court finds that Plaintiff has raised a genuine
dispute sufficient to survive summary judgment as to the second element of his quasi-contract
and services rendered claims.

Because Plaintiff has raised a genuine dispute of material fact as to both elements of his
quasi-contract and services rendered claims, the Court **DENIES** Defendant's motion for
summary judgment as to Plaintiff's third and fourth causes of action.

D.      <u>Fifth and Sixth Causes of Action: Intentional and Negligent Interference
with Prospective Economic Relations</u>

Defendant argues that Plaintiff's claims for intentional and negligent interference with
prospective economic relations fail because Plaintiff cannot establish several of the elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 21-339 PSG (SPx) | Date | February 11, 2022 |
|---|---|---|---|
| Title | Michael Ho v. Marathon Patent Group, Inc. et al. | | |

required to prove these claims. *Mot.* 27:11–30:20. Plaintiff does not respond to any of Defendant's arguments. In fact, his opposition entirely fails to brief his fifth and sixth causes of action. Accordingly, Plaintiff concedes that his claims for intentional and negligent interference with prospective economic relations fail as a matter of law. *Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015) (arguments to which no response is supplied are deemed conceded); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same). Thus, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's fifth and sixth causes of action.

VI.   <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment, as follows:

- The Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's first cause of action for breach of written contract.

- The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's second cause of action for breach of implied contract.

- The Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's third cause of action for quasi-contract.

- The Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's fourth cause of action for services rendered.

- The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's fifth cause of action for intentional interference with prospective economic relations.

- The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's sixth cause of action for negligent interference with prospective economic relations.

**IT IS SO ORDERED.**