UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:21-cv-00339-SSS-SPx | Date | May 7, 2025 |
|---|---|---|---|
| Title | *Michael Ho v. Marathon Patent Group, Inc. et al* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW OR REMITTITUR AND NEW TRIAL; (2) GRANTING DEFENDANT'S MOTION TO CORRECT JUDGMENT; AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST [DKT. 459, 460, 462]

Before the Court are Defendant Marathon's Renewed Motion for Judgment as a Matter of Law, Defendant's Motion to Correct Judgment, and Plaintiff's Motion for Prejudgment Interest. For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Renewed Motion for Judgment as a Matter of Law [Dkt. 459], **GRANTS** Defendant's Motion to Correct Judgment [Dkt. 460], and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Prejudgment Interest [Dkt. 462].

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case is about a cryptocurrency mining deal gone awry. Plaintiff Michael Ho ("Plaintiff" or "Ho") located an opportunity for cheap power with Beowulf, a power provider, in Montana. Seeing the opportunity to build a

cryptocurrency operation, Ho brought the information to Defendant MARA Holdings, Inc. ("Defendant" or "Marathon"). Marathon signed an NDA with Ho where it agreed to not disclose the information and agreed to pay him a commission if it circumvented him in closing the deal. The jury found Marathon ultimately breached the contract by entering into a deal with Two Point One ("2P1") to broker an agreement with Beowulf and provide other services to Marathon. After trial, the jury returned a verdict in favor of Ho on his breach of contract claim, and awarded approximately $138 million in damages. The Court denied Marathon's motion for judgment as a matter of law which it took under submission at trial. [Dkt. 455].

Marathon now renews their motion for judgment as a matter of law, or in the alternative, for a new trial and remittitur. [Dkt. 459, "RJMOL"; Dkt. 481, "RJMOL Opp'n"; Dkt. 484 "RJMOL Reply]. Marathon also moved to correct the judgment. [Dkt. 460, "MTC"; Dkt. 479, "MTC Opp'n"; Dkt. 485, "MTC Reply"].

Ho moved to amend the judgment for prejudgment interest. [Dkt. 462, "MPJI"; Dkt. 480, "MPJI Opp'n"; Dkt. 483, "MPJI Opp'n"].

Having reviewed the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Renewed Motion for Judgment as a Matter of Law, **GRANTS** Defendant's Motion to Correct Judgment, and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Prejudgment Interest.

## II.     LEGAL STANDARD

### A. Renewed Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(b), courts may enter judgment as a matter of law after a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *See* Fed. R. Civ. P. 50(a)(1). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). In considering a Rule 50(b) motion, unlike a Rule 59(a) motion, the court may not weigh the evidence or make credibility determinations. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Josephs*, 443 F.3d at 1062.

Procedurally, a Rule 50(b) motion is "a renewed Rule 50(a) motion." *E.E.O.C.*, 581 F.3d at 961. A party must first make a Rule 50(a) motion "before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court denies or defers ruling on the motion for judgment as a matter of law, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b). Fed. R. Civ. P. 50(b). Because a Rule 50(b) motion is a renewed motion, a party "cannot raise arguments in its post-trial motion that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment). The renewed Rule 50(b) motion "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

### B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a) authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court generally "must uphold a jury verdict if it is supported by substantial evidence." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010). Substantial evidence is evidence "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id. (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). Further, a court must uphold a jury's damages award unless the amount is "clearly not supported by the evidence, or only based on speculation or guesswork." *Id.* (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)).

However, a court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent . . . a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (quoting *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1452 (9th Cir. 1998)). In considering a Rule 59(a) motion, the court is "not required to view the trial evidence in the light most favorable to the verdict." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, the court "can weigh the evidence and assess the credibility of the witnesses." *Id.*

### C. Remittitur

A motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under Rule 59. *Martinez v. Costco Wholesale Corp.*, 2023 WL 1931836, at *25 (S.D. Cal. Feb. 10, 2023). "Remittitur is a procedure by which a court reduces the amount of damages awarded by the jury after finding the

award to be excessive." *Hill Phoenix v. Classic Refrigeration SoCal, Inc.*, 2021 WL 8820858, at *4 (C.D. Cal. Dec. 12, 2021). The Ninth Circuit requires a court to give "substantial deference to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). A court "must uphold the jury's finding unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Id.* If an award is reduced, the award should reflect "the maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (quoting *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982)).

When assessing remittiturs of state-law claims, federal courts apply state law. *Id.* (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 431 (1996)). California law expressly authorizes remittitur when there are "excessive damages." Cal. Civ. P. Code § 662.5. Trial courts have broad discretion to remit excessive damages and sit as "independent trier[s] of fact" when doing so. *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 825 (N.D. Cal. 2022) (citing *Lane v. Hughes Aircraft Co.*, 993 P.2d 388, 412 (Cal. 2000)).

## III. DISCUSSION

### A. Motion for Judgment as a Matter of Law

Essentially, Marathon's Motion boils down to three key issues.[1] First, Marathon argues that the jury should not have awarded Ho the 3 million shares it paid 2P1, because its deal with 2P1 was distinct and would be an award of lost revenue, not lost profits. Second, in any event, Marathon did not pay 2P1 a "commission" and so the 3 million share transaction is not comparable. And third, if any damages award is pegged to stock, Marathon argues the jury violated the law by valuing the stock at the date the lockup ended.

#### a. Lost Revenue

The Court starts where it agrees with Marathon—the jury awarded lost revenue, not lost profits. Marathon contends that the jury erred by awarding $137 million to Ho. The $137 million figure is drawn from the 3 million shares that Marathon paid 2P1 on a separate agreement. That agreement (the "Services

---

[1] Marathon disagrees with jury's liability finding but does not challenge it in the motions before the Court today.

Agreement") was a "package deal" of two parts: (1) brokering an agreement with Beowulf for power; and (2) providing ongoing "management services" and "facility services," like operating and maintaining the Hardin facility. [RJMOL at 11; Dkt. 469-3 Ex. R, "Okamoto Dep." at 161:09]. This is error, Marathon argues, because it puts Ho in a better position than had the agreement been executed because, unlike 2P1, Ho was not awarded the services component of the contract and so did not incur any costs executing that part of the agreement. The parties dispute whether Ho would have been awarded the management services component of the agreement, but there is no meaningful dispute that Ho did not incur costs relating to servicing the Beowulf project.

In California, a plaintiff cannot be awarded gross revenue in a breach of contract case. Awarding a plaintiff gross revenue puts them in a better position than if the contract had been performed because the plaintiff did not actually incur the costs of performance. Cal. Civ. Code § 3358; *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884 (2002).

The jury awarded gross revenue. Ho received as damages the total revenue on a contract for both brokering and management services. Ho bore the burden of proving his damages, and there was no evidence presented at trial as to the amount 2P1 expended operating the plant, even if for a brief period, that would permit calculation of 2P1's actual profits.[2] Thus, there is insufficient evidence to award Ho any damages on the portion of the contract attributable to payment for providing ongoing management services.

//
//
//
//
//
//
//
//

---

[2] In its Motion, Marathon only takes issue with the jury awarding the revenue on the management services portion of the contract. [Reply at 9 ("To obtain the shares, 2P1 expended significant amounts carrying out management services that Plaintiff did not provide.")].

As previously discussed, the jury's verdict and the record reflect that the 2P1 contract was not for solely management services, and instead, in significant part, a commission. The Court now asks whether there is an "identifiable amount" of the verdict that is "not permitted by law" that can be severed from the total verdict. *Payan v. L.A. Cmty. Coll.*, No. 2:17-cv-01697, 2024 WL 1676846, at *3 (C.D. Cal.).[3]

The Court agrees with Ho that eighty percent of the verdict can be upheld by evidence presented at trial because twenty percent is barred by law. [Dkt. 453, "Day 7 Tr." at 10:17–18 ("[Ho]'s entitled to at a minimum 80 percent of the compensations just for delivering the package.")] *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1351 (Fed. Cir. 2001) (reduction of damages under motion for judgment of matter of law appropriate to the "maximum damages possible" supported by "legally competent evidence"). At trial, Ho's expert John Paul Baric testified that eighty percent of the value in a deal like the one between Marathon and 2P1 is "created from locating the facility" and "finding the energy," and twenty percent in providing ongoing services because "lots of groups" provide that "commoditized" service. [Dkt. 449, "Day 3 Tr." at 142:11–17]. The evidence Ho presented at trial by his expert Baric was sufficient to support up to eighty percent of the jury's verdict as the portion due for a brokering transaction. Because Ho did not present evidence of 2P1's expenses, it is impossible to calculate what portion of the remaining twenty percent would have been Ho's profits. As such, the Court is not in a position to award any of the remaining twenty percent and strikes it from the award entirely.

Marathon disputes whether the agreement is so easily severable into brokering (for which a commission was due) and services components, and at times, seems to suggest that no portion of the agreement constitutes a commission. As discussed below, in pegging its damages award at $137 million, the jury clearly recognized that 2P1's deal served to replace, and thus circumvented, Ho's

---

[3] Though the parties do not spend much time briefing whether a reduction is best accomplished via a motion for judgment as a matter of law, a motion for a new trial, or remittitur, the Court follows Marathon's suggestion, [Reply at 5], and uses judgment as a matter of law as its vehicle. The Court agrees with other courts in this District that have held that "[w]hen a damages verdict is excessive because of a pure legal error," judgment as a matter of law is more appropriate than a new trial. *Payan*, 2024 WL 1676846, at *3 (quoting *Taddeo v. Am. Invsco Corp.*, No. 2:12-CV-01110, 2015 WL 4416490, at *9 n.76 (D. Nev. July 20, 2015)).

contemplated deal with Marathon.  Marathon's argument is further undercut by the evidence presented at trial.  In his deposition, Marathon's CEO described its 3 million share payment to 2P1 as a "package deal" for both "putting the deal together" and "access to power at industry low cost."  [Okamoto Dep. at 160:20–161:09].  Further, Marathon shifted positions throughout the case, earlier arguing that 2P1 was paid for "months of work in negotiating and ultimately consummating a transaction between MARA and Beowulf resulting in payment of shares" and now argues 2P1 was paid for "management services" for ongoing operations.  [ECF 147 at 15; RJMOL at 11].  The jury did not err in finding that the Services Agreement was predominantly for brokering the transaction.

Marathon also attacks the qualification of Baric as an expert in its motion and his methodology, but the Court declines to revisit its previous ruling on the issue.  [*See* Dkt. 260 at 6 (denying motion in limine seeking to exclude Baric's testimony)].  The Court will not accept Marathon's proposed reduction to $100,000 or $150,000.  [RJMOL at 6–7].  That estimate comes from the testimony of its own CEO, and the jury clearly rejected his estimate as unconvincing in its verdict.

The only portion of the jury award that must be reversed is that attributable to 2P1's service provision.  The Court's cutting of all portions of the Services Agreement where the value is attributable to management and facility services resolves most of Marathon's other objections.  If the jury award is cut to include only that portion of the Services Agreement attributable to what Marathon paid as commission to 2P1, and not the services, Marathon's argument that the jury awarded special damages, not general damages, falls away.  There is no longer an award for Ho's profits on a future business opportunity, and so the Court denies this objection as moot in light of its ruling above.

### b. Meaning of "Commission"

Marathon also takes issue more generally with the jury's general reliance on its deal with 2P1 as a comparable transaction upon which to award Ho damages.

Under the NDA, if Ho was circumvented, he was entitled "to any commissions due pursuant to this Agreement or relating to such transaction." [Dkt. 459-4 Ex. 2, "NDA" § 5].  Marathon argues that the jury's damages award exceeds the scope of what California law permits for recovery as a commission.  A commission, Marathon posits, is "a portion of the total value of the transaction," relying on both dictionaries and California law.  [RJMOL at 8].  The Oxford English Dictionary, one cited example, defines a commission as "a payment, for services or work done as an agent in a commercial transaction, typically a set

percentage of the value involved." *Oxford English Dictionary* (rev. ed. 2015). And California courts have sometimes defined a commission similarly. *See, e.g.*, *Baker v. Am. Horticulture Supply, Inc.*, 111 Cal. Rptr. 3d 695, 709 (Cal. Ct. App. 2010). Marathon relies on these definitions to suggest that Ho's damages must be capped at "(1) the fee or percentage the Agreement itself provides for Plaintiff's role in brokering the power-purchase deal; or (2) the fee or percentage commission owing or payable to a third party for brokering that transaction." The jury verdict, Marathon argues, exceeds this amount.

As already discussed above, the Court agrees with Marathon the jury's verdict was excessive to the extent the jury awarded shares in excess of Ho's potential profits from the deal. However, the Court does not agree with Marathon that no part of its deal with 2P1 was for brokering services. As previously discussed, Marathon's own CEO testified that the deal was a "package" of brokering and management services. Likewise, it was Marathon's previous position in this case that the deal was for brokering a transaction with Beowulf. [ECF 147 at 15]. The jury held Marathon's deal with 2P1 was a circumventing transaction.

What is left is whether Ho can be awarded a flat fee Marathon paid another entity for brokering the transaction as a commission. The Court will not equate the general meaning of commission with the full scope of its meaning. The Court agrees with Marathon and its proffered definitions that commissions are generally some percentage of the total value of a transaction. Marathon points to no authority, however, that this meaning is exclusive or limiting. In fact, most of Marathon's definitions that emphasize a rate or percentage first define commissions broadly and use the rate or percentage as the general example. *See, e.g.*, *Oxford English Dictionary* (rev. ed. 2015) (first defining a commission as "a payment, for services or work done as an agent in a commercial transaction," then explaining it is "*typically* a set percentage of the value involved" (emphasis added)); *Webster's New Int'l Unabridged Dictionary* 457 (3d ed. 2002) (explaining a commission is "especially" "a percentage of the money received in a sale or other transaction paid to the agent responsible for the business"); *Commission*, *Black's Law Dictionary* (12th ed. 2024) (similar).

Ho's verdict represents the amount Marathon actually paid 2P1 "for services or work done as an agent in a commercial transaction." *Oxford English Dictionary* (rev. ed. 2015). Thus, Marathon does not prove that the jury award is inconsistent with its proffered definitions. As discussed below, the jury fairly determined that "the fee" that would have been paid to Ho is the stock Marathon paid to 2P1 to broker the transaction with Beowulf in circumvention of Ho.

### c. Date of Damages

Finally, Marathon argues that the jury erred in valuing the shares Marathon paid 2P1 at the date 2P1's holding period expired instead of the date of breach six months earlier. Marathon reads California law to hold that shares must be valued at the time of breach. The difference in this case is significant. If the shares are valued at October 6, 2020, they would be worth no more than $5.6 million. If they are valued six months later, the shares are valued at $138 million.[4]

Under California law, the "general rule" is to measure damages at the date of breach. *Shah v. Skillz Inc.*, 101 Cal. App. 5th 285, 300 (2024) (quoting *Sackett v. Spindler*, 248 Cal. App. 2d 220, 234 (1967)). However, this rule is not absolute. In the case of stock options, plaintiffs are sometimes allowed to recover after the breach in order to permit the plaintiff's recovery of "'a relevant benefit of his bargain, namely the prospect of future profits which provide the fundamental underpinning to stock options' granted to employees of startups." *Shah*, 101 Cal. App. 5th at 303 (quoting *Scully v. US WATS, Inc.*, 238 F.3d 497, 510 (3d Cir. 2001)). Some courts have held a plaintiff can value stock options after the date of the breach "if a plaintiff presents credible, convincing evidence that he would have exercised his options on a specific date" and that intent "was formulated before he had the benefit of hindsight." *Shah*, 101 Cal. App. 5th at 303 (quoting *Moser v. Encore Cap. Grp., Inc.*, 964 F. Supp. 2d 1224, 1227–28 (S.D. Cal. 2012)). Other courts are less demanding, and, cabining *Moser* to the facts before it, have stated all that is required is "credible" testimony, not a specific pre-breach intent. *Wang v. EHang Holdings Ltd.*, No. 20-CV-00569-BLF, 2022 WL 5264648 (N.D. Cal. Oct. 6, 2022). The Court agrees with those courts reading of *Moser* that there is no brightline rule and "it is ultimately for the jury to determine whether a plaintiff's testimony regarding his plan to exercise his stock options 'is credible or is merely self-serving hindsight.'" *Id.* (quoting *Moser*, 964 F. Supp. 2d at 1229).

The Court declines to substitute its judgment for that of the jury in assessing the credibility of Ho's pre-breach plans to sell his stock.

The parties presented the jury with several options of when to value the stock. The valuation the jury chose—$138 million—landed on the date that the six-month share lockup expired. Ho testified he would have sold his shares "once the six months were up" and the jury credited that testimony. [Dkt. 448, "Day 2

---

[4] These numbers, of course, reflect the value of the full 3 million shares and do not reflect the Court's deductions above.

Tr." at 87:6–9]. 2P1, the best barometer of real investment behavior, sold the shares immediately following the lockup expiration. [Dkt. 481-3 Ex. M "O'Rourke Dep." at 198:22-199:11].

Marathon argues that Ho could not have formulated such objective intent because he was never actually awarded the shares. However, Ho stated he had familiarity with restricted periods from previous dealings with Marathon, who at the time chose to pay in stock instead of cash. [Day 2 Tr. at 86:14–87:9; Dkt. 451, "Day 5 Tr." 60:4-18]. Ho's prior dealings with Marathon, plus other objective factors like the valuation of the stock at the end of the restricted period (as opposed to its peak), suggest the jury permissibly relied on objective factors about when Ho would sell the stock. Ho's testimony was sufficiently supported "by objective factors" that were more than "self-serving hindsight." *Moser*, 964 F. Supp. 2d at 1229. By requiring Ho to have a specific intent about the particular shares it gave to 2P1, Marathon is asking the Court to reward it for circumventing Ho in a separate transaction to which Ho was not a party. "Draw[ing] from general principles of contract law to fashion a valuation rule that fits the specific circumstances," the Court finds Ho presented sufficiently "credible" evidence of his objective intent. *Id.* at 1229; *Wang*, 2022 WL 5264648 at *7–*8. The Court denies Marathon's motion to value the shares as of the date of breach.

In sum, the Court **GRANTS IN PART and DENIES IN PART** Defendants' renewed motion for judgment as a matter of law and reduces Plaintiffs' award by twenty percent.

### B. New Trial

Defendant's motion for a new trial, or in the alternative, remittitur, is premised on the same arguments as its renewed motion for judgment as a matter of law. [RJMOL at 23–24]. In light of the Court's decision on the motion for a judgment for a matter of law, it sees no remaining error that would merit granting Defendant's motion for a new trial, or in the alternative, remittitur. As such, the motion is **DENIED.**

If a court grants a motion for judgment as a matter of law, it must conditionally rule on the motion for a new trial if it were to be reversed on appeal. *See* Fed. R. Civ. P. 50(c)(1) ("If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed."). Marathon only requests a new trial on the issue of damages. [RJMOL at 23]. The Court sees no other issues with the verdict other

than those identified above, and so would **CONDITIONALLY DENY** Marathon's motion for a new trial on the issue of damages.

### C. Motion to Correct Judgment

Marathon also brings a motion to correct the postjudgment interest rate. Postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district Court." 28 U.S.C. § 1961; *see Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) ("the award of post judgment interest on a district court judgment is mandatory."). Under 28 U.S.C. § 1961, the rate of post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." This judgment rate is "mandatory in cases awarding post judgment interest." *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1092 (9th Cir. 2014)

In this case, the jury rendered its verdict on July 18, 2024. Ho submitted a proposed judgment on July 26, 2024. That proposed judgment listed an interest rate of 4.96%, the weekly average of the preceding weeks' Treasury yields. To correct a mistake in the judgment, Marathon objected to the entry of judgment, which resulted in a roughly two month delay. In that time, the interest rate fell to 4.08% when the judgment was ultimately entered on September 18, 2024. [Dkt. 445].

The parties discuss at length the equities of the delay, but the Court declines to wade into that dispute. Ho does not submit any authority that suggests the judgment rate is anything other than mandatory. *Van Asdale*, 763 F.3d at 1092. As such, the Court **GRANTS** Marathon's motion to correct the judgment and set the interest rate appropriate to when the judgment was entered, 4.08%.

### D. Motion for Prejudgment Interest

Ho moves for two types of prejudgment interest on the jury's verdict. He seeks interest that accrued from the date of the breach of contract and interest that accrued after the jury's verdict but before the entry of judgment.

"Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. 'Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)

(quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en banc) (per curiam)). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id*. (citing *McDowell*, 197 F.3d at 1255 n.1).

In a breach of contract case, California law governs the award of prejudgment interest. *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). In California, prejudgment interest is mandatory once damages are liquidated, or "certain, or capable of being made certain by calculation." Cal. Civil Code § 3287(a). Here, because damages were in dispute, damages became liquidated as of the date of the verdict, July 18, 2024. Before that point, the Court's award of prejudgment interest is discretionary. Cal. Civil Code § 3287(b). The statutory rate of prejudgment interest in California for this type of claim is ten percent. Cal. Civil Code § 3289.

The Court addresses Ho's entitlement to each type of interest in turn.

### a. Pre-Verdict Prejudgment Interest

Ho moves for pre-judgment interest for the period between the date he would have been able to sell the restricted shares of Marathon and the day the jury's verdict, April 7, 2021 to July 17, 2024. [MPJI at 8].

Where damages are not yet liquidated, it is left to the discretion of the trial court whether to impose prejudgment interest. Cal. Civil Code § 3287(b). Though this list of factors is not exhaustive, trial courts generally consider "(1) the time between the lawsuit's filing and the judgment, (2) whether awarding interest will penalize the defendant for 'litigating a bona fide dispute' or recognize that the plaintiff incurred 'an additional amount of damage' as a result of the breach, (3) whether the plaintiff made settlement offers such that the defendant's refusal could be construed as 'placing the prejudgment interest amount at risk'" in awarding prejudgment interest. *Segler Holdings, LLC v. Miller*, No. CV154335, 2017 WL 2269424, at *1 (C.D. Cal. Jan. 11, 2017) (quoting *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 498 (1982)). Trial courts also consider whether "the jury's assignment of damages fairly compensated [the plaintiff] for its losses." *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 580 (2021).

Marathon did not unreasonably delay this case. This case took 42 months to proceed to trial. As the parties' briefing makes clear, courts have both granted prejudgment in shorter cases and denied in longer cases. *Compare Segler Holdings, LLC*, 2017 WL 2269424, at *1 (granting prejudgment interest in 16 month-old case), *with Fresno Rock Taco, LLC v. National Sur. Ins. Corp.*, 2015 WL 135720, at *27 (E.D. Cal. Jan. 9, 2015) (denying prejudgment interest in 39 month-old case). The 42 months is roughly in range with the 30 month average in the district.

Awarding Ho prejudgment interest would penalize Marathon for litigating a bona fide dispute. The Court heard and considered legitimate motions from both parties. It dismissed some of the claims that Plaintiff originally brought, and Plaintiff ultimately only pursued one of the claims it originally brought. [Dkt. 174, 413]. While, at times, the Court disagreed with Marathon, it does not think the disputes in this case were not bona fide.

The settlement factor favors Ho. Ho made multiple settlement offers centered around a $10 million valuation. [Zucker Decl. ¶¶ 3–6]. The question in the settlement factor is whether the Defendant put a higher amount at risk by refusing settlement offers. *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1226 (C.D. Cal. 2020). Marathon seems to argue that because a high verdict was unlikely (and Ho's offers for a lower amount reflected that he thought it was unlikely as well), that low chance justified Marathon's refusal to entertain the offers. That argument fails, because the analysis already takes into account the strength of Marathon's arguments in the bona fide dispute factor, and because adopting such an argument would punish a Plaintiff for making reasonable settlement offers. That Ho was ultimately awarded the high end of what he was asking only emphasizes that Marathon put the full amount at risk by rejecting Ho's settlement offers for a much lower sum.

Finally, Ho was fairly compensated for his losses. The California Court of Appeal has upheld a trial court's denial of prejudgment interest where "the jury elected to adopt the expert's preferred damages model at the 'higher end' of the range presented." *Hewlett-Packard Co.*, 65 Cal. App. 5th at 580. Where, as here, damages are "highly contested and uncertain," and the jury adopts a verdict at the top end, a denial of prejudgment interest is appropriate. *Id.*

While one factor—settlement—favors Ho, the remainder either favor Marathon—bona fide dispute and fair compensation—or are neutral—length of litigation. Because more factors weigh in Marathon's favor, and considering the

overall equities of the case, the Court declines to award Ho pre-verdict prejudgment interest.

### b. Post-Verdict Prejudgment Interest

Ho also requests the Court award him interest from the date of the jury's verdict until the entry of Judgment, that is, between July 18, 2024 and September 17, 2024. [MPJI at 7]. "Pursuant to section 3287(a), prejudgment interest is mandatory where damages are 'certain, or capable of being made certain by calculation.'" *ACTA, A Member of the All., Inc. v. Rhythm Pharms., Inc.*, No. 2:22-CV-01127, 2024 WL 4216415, at *3 (C.D. Cal. Sept. 16, 2024) (quoting Cal. Civ. Code § 3287(a)).

Marathon makes various arguments about the injustices of awarding such interest, observing that there was an error in Ho's proposed judgment and it had to object to the entry of judgment.[5] While the Court is sympathetic to Marathon's argument, it can locate no authority to support denying Ho post-verdict prejudgment interest on equitable grounds alone. In applying California breach of contract law, the "trial court has no discretion under § 3287(a) and must award prejudgment interest from the first day there exists both a breach and a liquidated claim." *Glassman v. Safeco Ins. Co. of Am.*, 90 Cal. App. 5th 1281, 1315 (2023).

---

[5] The Court's sympathy, however, only extends so far. The Court delayed the entry of judgment at Marathon's request. There is no serious dispute in this case that post-verdict prejudgment interest is mandatory in California. Marathon could have also allowed the entry of judgment to proceed and filed, as it has now, a motion to correct the judgment to avoid incurring prejudgment interest at a higher rate than postjudgment interest.

The Court also finds it necessary to point out that the parties have taken conflicting positions on the dating of the judgment. In opposition to Marathon's Motion to Correct Judgment, Ho took the position that the Court should backdate the judgment to apply a higher interest rate. And in opposition to Ho's Motion for Prejudgment Interest, Marathon asks the court to toll the period it took to file its objection to Ho's proposed judgment. [MPJI Opp'n at 20]. The parties could have reached a separate agreement on the date at which judgment was entered and interest is calculated, but they chose to put it before the Court. This Court is bound by the clear mandates of state and federal law and applies them today.

The breach and liquidated claim existed once the jury delivered its verdict. Prejudgment interest began to accrue then.

Thus, the Court **DENIES** Ho's motion for pre-verdict prejudgment interest and **GRANTS** Ho's motion for post-verdict prejudgment interest.[6]

## IV.  CONCLUSION

For the above reasons, Defendant's renewed motion for judgment as a matter of law is **GRANTED IN PART AND DENIED IN PART**.  The judgment is reduced by twenty percent.  Defendant's motion for a new trial is **DENIED** in light of the Court's ruling on the Judgment as a Matter of Law, and **CONDITIONALLY DENIED** in the event the Court's ruling is overturned.  Defendant's Motion to Correct the Judgment is **GRANTED**.  Plaintiff's Motion for Prejudgment Interest is **GRANTED IN PART** as to the post-verdict prejudgment interest and **DENIED IN PART** as to the pre-verdict prejudgment interest.

Plaintiff is **ORDERED** to lodge a proposed corrected and amended judgment consistent with this order no later than May 16, 2025.

**IT IS SO ORDERED.**

---

[6] While Marathon disputes Ho's totaling of interest, it does not contest the validity of Ho's figure of $2,357,358 for such interest.  [MPJI Opp'n at 4 n.1].  The interest in the corrected and amended judgment must reflect the Court's twenty percent reduction of the jury's award in its ruling on the renewed motion for judgment as a matter of law.